■ In the Matter of EDWARD J. MUHL, Superintendent of Insurance of the State of New York, as Liquidator of Nassau Insurance Company, Appellant, v ALDO A. TRABUCCHI et al., Respondents. [673 NYS2d 103] —Order, Supreme Court, New York County (Karla Moskowitz, J.), entered August 8, 1996, which dismissed the petition seeking to hold respondents in civil contempt for violating a consent order in an ancillary action, unanimously modified, on the law, to reinstate the petition insofar as it relates to checks in the amount of $58,557.42 and $127,541.20 and to order a new trial on the partially reinstated petition, and otherwise affirmed, without costs.

In this civil contempt proceeding against respondents, Aldo Trabucchi individually and his law firm Charnin & Trabucchi, who are attorneys for Richard A. DiLoreto and Jeanne S. DiLoreto in an underlying action entitled *Curiale v Ardra Ins. Co. Ltd., Richard A. DiLoreto and Jeanne S. DiLoreto* (the *Ardra* action), petitioner, the Superintendent of Insurance of the State of New York, acting as liquidator of an insolvent insurance company, Nassau Insurance Company (Nassau), seeks to recover $780,027.10 in damages allegedly suffered as a result of respondents' violation of a June 28, 1985 consent order entered in the *Ardra* action.

The evidence set forth by petitioner at the nonjury trial showed that, in the *Ardra* action, petitioner had sought to recover reinsurance proceeds due Nassau, which is owned and controlled by Richard and Jeanne DiLoreto, under three reinsurance agreements from Ardra Insurance Co., Ltd. (Ardra), a Bermudian reinsurer, which was also owned and controlled by the DiLoretos, through their holding company Tiber Holding Corporation, and to hold the DiLoretos liable for breach of fiduciary duty. In *Curiale v Ardra Ins. Co.* (211 AD2d 473, *appeal dismissed* 86 NY2d 774), this Court affirmed a judgment in favor of petitioner's predecessor and against Ardra in the amount of $16,351,398.11. Petitioner notes, and respondents do not contest, that no part of that judgment has as yet been paid.

When the *Ardra* action was commenced in 1985, petitioner had attempted to restrain the assets of Ardra and the DiLoretos pending the outcome of the litigation. The prejudgment attachment effort was settled by a consent order entered June 28, 1985, which provided, in pertinent part, that: "Ardra Reinsurance Co. Ltd. ('Ardra'), its officers, directors, shareholders, and assigns, without waiving any jurisdictional objections, shall, for so long as this action is pending, not * * * expend, obligate, promise, assign, pay, remove, transfer or convert in any manner whatsoever any assets whatsoever of defendant Ardra located anywhere in the United States".

Beginning in 1985, and continuing at least through March 1996, Ardra advanced to the DiLoretos from the funds it held in Bermuda certain funds which, respondents allege, were to cover their costs, including legal fees, incurred in their defense of the *Ardra* action. However, during this period, Richard DiLoreto was covered by a directors and officers liability policy issued by National Union Fire Insurance Company of Pittsburgh to Venice Holding Corporation, a subsidiary of the DiLoretos' Tiber Holding Corporation, which included coverage

for, *inter alia*, the DiLoretos' defense costs with respect to the *Ardra* action. Pursuant to a settlement of the DiLoretos' claims under this policy, National Union issued four checks to respondent Charnin & Trabucchi for the benefit of Richard DiLoreto. It is the ultimate disposition of these four checks that forms the substance of this proceeding to hold respondents in contempt.

First, on April 21, 1994 a check in the amount of $71,668.02 was issued by National Union payable to Charnin & Trabucchi. Subsequently, a check in the same amount was drawn by defendant Aldo Trabucchi against his firm's trust account payable to Richard DiLoreto, who then endorsed the check over to Ardra.

Second, on September 8, 1994 a check in the amount of $58,557.42 was issued by National Union made payable to Charnin & Trabucchi as attorney. Subsequently a check in the same amount payable directly to Ardra was drawn on the Charnin & Trabucchi trust account.

Third, on December 17, 1994, a check payable to Charnin & Trabucchi in the amount of $127,541.20 was issued by National Union. Charnin & Trabucchi then endorsed it over to Ardra.

Fourth, on April 28, 1995 a check in the amount of $522,350.48 made payable to Charnin & Trabucchi was drawn on the trust account of the law firm of D'Amato & Lynch, counsel for National Union. The check was then endorsed by Trabucchi to the order of Richard A. DiLoreto, who then endorsed it over to Ardra.

The second and third of these checks were then sent by respondents to Ardra in Bermuda and were deposited in Ardra's bank account there. The first and fourth were sent directly by DiLoreto to Ardra. While evidence was admitted indicating that, during the course of the *Ardra* action, Richard DiLoreto had admitted that the reason he directed respondents to transfer funds to Ardra was to reimburse Ardra for his legal fees, an attorney for D'Amato & Lynch and the representative of National Union testified that DiLoreto was entitled to use the funds in any way that he wished.

Respondent Trabucchi testified on petitioner's case that, as the DiLoretos' fiduciary, he followed his clients' instructions regarding the disposition of the insurance proceeds, which belonged to the DiLoretos and not to himself.

After petitioner rested, respondents moved to dismiss, arguing that petitioner had failed to set forth a prima facie case that there was any prohibition contained in the consent order

against transferring funds to Bermuda, since Bermuda is not "in the United States". They also argued that petitioner had failed to show that the funds in question were the property of Ardra or that respondents had any reason to believe that they were the property of Ardra and, consequently, failed to prove that respondents knowingly violated the consent decree. Petitioner argued that Ardra had an interest in the funds paid out by National Union since they were used to reimburse defense costs Ardra had advanced on behalf of DiLoreto and that Ardra had a property interest in each of the four negotiable instruments once the instrument was made out or endorsed over to Ardra. As a result, according to petitioner, respondents violated the consent order and the restraining notices by their assistance in transferring the funds to Ardra in Bermuda. The court granted the motion to dismiss finding, inter alia, that the transfer of Ardra's property to Bermuda was not in violation of the consent order and that, in any case, the evidence did not demonstrate that the checks were Ardra's property.

First, contrary to the IAS Court, we find that the consent order, which prohibited transfer of any of Ardra's assets that were "located anywhere in the United States", clearly prohibited the transfer of Ardra's funds to Bermuda. The order obviously encompasses the transfer of any assets in the United States, regardless of whether they are being transferred to somewhere else in the United States or abroad. To read the order otherwise would be to render it nonsensical. Moreover, we agree with the IAS Court that although respondents were not attorneys for the DiLoretos at the time the order was entered into, petitioner adequately established that they were fully familiar with its content.

Moreover, we find that the evidence set forth by petitioner was sufficient to establish a prima facie case that respondents knew that the second and third checks were the property of Ardra and that respondents, in transferring the checks to Bermuda pursuant to their client's instructions, were therefore in contempt of the order. Respondents actually wrote one of these checks payable to Ardra and endorsed the other one over to Ardra. At that point, the checks themselves were subject to the order restraining transfer (see, CPLR 5201 [c] [4]).

However, as to the other two checks, the evidence showed only that respondents transferred them to Richard DiLoreto. Contrary to petitioner's argument, he did not establish at trial that these checks were already Ardra's property based on the theory that they represented payment to Ardra for an anteced-

ent debt. There was neither proof that the DiLoretos were legally obligated to reimburse Ardra for the monies used to pay for their legal costs in the *Ardra* action nor evidence that these funds were paid to the DiLoretos by National Union solely on the condition that they would be used for such reimbursement. Nor is there evidence that the checks had been endorsed over to Ardra before they left respondents' possession.

For these reasons, we find that petitioner set forth a prima facie showing that respondent was in contempt of the order insofar as it involved the second and third checks. Since the IAS Court dismissed the petition at the close of petitioner's evidence, we remand for a new trial as to those two charges. Concur—Ellerin, J. P., Wallach, Rubin, Tom and Saxe, JJ.